UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
———

JOHN LEROY SIGOURNEY, JR.,

          Plaintiff,                    Case No. 1:23-cv-613

v.                                          Honorable Sally J. Berens

MARK DANIELSON et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

2

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim. Plaintiff's allegations might also be construed as attempting to raise state-law tort claims. To the extent Plaintiff intended to raise such claims, the Court will dismiss them without prejudice because the Court declines to exercise supplemental jurisdiction over them.

## Discussion

### I. Factual allegations

At the time Plaintiff John Leroy Sigourney, Jr. filed suit, he was held at the Mecosta County Jail pending transfer to the custody of the Michigan Department of Corrections (MDOC). Plaintiff had pleaded guilty to the possession and/or use of methamphetamine in three Mecosta County

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Circuit Court criminal prosecutions. *See* MDOC Offender Tracking Information System (OTIS) https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=279093 (last visited July 27, 2023). The court had imposed concurrent sentences of 1 year to 15 years, 1 year, 2 months to 20 years, and 1 year, 2 months to 4 years. Plaintiff has since been transferred to the custody of the MDOC at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Jackson County, Michigan. The events about which he complains occurred at the Mecosta County Jail.

Plaintiff sues the Mecosta County Jail and the following Mecosta County Sheriff's Department personnel: Lieutenant Mark Danielson; Sergeant Unknown Haun; Corrections Officers Unknown Harwood and Unknown Prince; and Nurse Unknown Sami. In Plaintiff's original and supplemental complaints (ECF Nos. 1, 7), Plaintiff alleges that Defendants gave him the wrong medications on two occasions.

On May 22, 2023, Defendant Prince gave Plaintiff another prisoner's medication packet including three low blood pressure pills instead of Plaintiff's medication packet containing an antidepressant and a mood stabilizer. Plaintiff reports that Defendant Prince later explained that the packets were confused because both prisoners had the same first name.

Plaintiff does not indicate whether he ever received the correct medications that day. He does not indicate whether he took the wrong medications provided. He does not report that he suffered any injury resulting from Defendant Prince's provision of the other inmate's medication packet.

On May 28, 2023, Defendant Harwood gave Plaintiff the medication packet intended for Plaintiff, but it contained two mood stabilizer pills and no antidepressants. Plaintiff pointed out the apparent error, but Defendant Harwood reminded Plaintiff that his name was on the packet and that the medications could have changed. Plaintiff claims that, thereafter, he "had [a] pounding

4

headache . . . [and] was super depressed [and] angry with bad anxi[e]ty." (Compl., ECF No. 1, PageID.4.)

Defendant Harwood gave Plaintiff two major misconducts that day. Plaintiff attributes the misconducts and his poor physical and mental health status that day to taking the wrong medications. At his hearing, Defendant Sami indicated that incorrect medications would not have resulted in the misconducts. Sergeant Haun presided over the hearing regarding Plaintiff's misconduct reports. Although Plaintiff does not expressly state the result, it appears that Plaintiff was found guilty of the misconducts.

Plaintiff wrote a grievance regarding the medication error. Defendant Danielson reviewed the grievance. Plaintiff was told that Defendant Sami verified that Plaintiff was given the correct medications.

Plaintiff seeks $350,000.00 in damages and asks that all charges against him be dropped and that he be released.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

5

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Mecosta County Jail

Plaintiff names the Mecosta County Jail as a defendant in this case. Plaintiff's Section 1983 claims against the Mecosta County Jail fail because a jail is not a legal entity capable of being sued. *Brady v. Ingham Cnty. Corr. Facility*, No. 1:08-CV-839, 2008 WL 4739082, at *2 (W.D. Mich. Oct. 28, 2008) (citing *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002)); *Rhoads v. Booher*, No. 1:20-cv-1040, 2020 WL 7382283, at *4 (W.D. Mich. Dec. 16, 2020) (noting that "the Mecosta County jail is a building, not an entity capable of being sued in its own right."). Therefore, the Court will dismiss Plaintiff's Section 1983 claims against Defendant Mecosta County Jail.

Liberal construction of Plaintiff's complaint might support substituting Mecosta County as a defendant in place of the Mecosta County Jail, but that would not improve Plaintiff's position.

A local government such as a county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a county may only be liable under Section 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–37 (2010) (citing *Monell*, 436 U.S. at 694). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508–509.

A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff. *Monell*, 436 U.S. at 690. There are no facts alleged in Plaintiff's complaint from which the Court might infer the existence of a county policy that resulted in the injury Plaintiff claims. Moreover, there are no facts alleged from which the Court might infer that Mecosta County has, in practice adopted a "custom." The Sixth Circuit has explained:

> "An actionable 'custom,' in contrast, 'has not received formal approval through . . . official decisionmaking channels.' A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue." *Id*. (quoting *Monell*, 436 U.S. at 690–91, 98 S. Ct. 2018). As we have explained,
>
>> A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691, 98 S. Ct. 2018 (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.), *cert. denied*, 510 U.S. 826, 114 S. Ct.

7

> 90, 126 L. Ed. 2d 57 (1993). In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy." *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369, 60 S. Ct. 968, 84 L. Ed. 1254 (1940). It must reflect a course of action deliberately chosen from among various alternatives. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L.Ed.2d 791 (1985). In short, a "custom" is a "legal institution" not memorialized by written law. *Feliciano*, 988 F.2d at 655.

*Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507–08 (6th Cir.1996).

*Frontera v. City of Columbus Div. of Police*, 395 F. App'x 191, 196 (6th Cir. 2010); *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 814–15 (6th Cir. 2005).

The crux of Plaintiff's complaint is that he was shorted an antidepressant pill and given two mood stabilizer pills on one day. Even if Plaintiff missed his medications altogether when he was provided another inmate's medication packet, that would be only two instances of "wrong" medications over the months of Plaintiff's detention in the Mecosta County Jail. The allegations are not sufficient to state a claim against Mecosta County. Thus, the Court will not direct the Clerk to substitute Mecosta County as a defendant in place of the Mecosta County Jail because it would be futile.

### B. Defendant Danielson

The only facts alleged regarding Lieutenant Danielson relate to Danielson's review of Plaintiff's grievance. The United States Court of Appeals for the Sixth Circuit has held that, where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under Section 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason for that holding is that there must be active unconstitutional behavior before there can be liability under Section 1983. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.*

Additionally, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (discussing that there is no constitutional right to a grievance procedure).

Moreover, government officials, such as Defendant Danielson, may not be held liable for the unconstitutional conduct of subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Furthermore, as discussed above, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific

9

> incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993),

Here, Plaintiff fails to allege any *facts* showing that Defendant Danielson encouraged or condoned the conduct of the other Defendants, or authorized, approved, or knowingly acquiesced in the conduct. For these reasons, Plaintiff fails to state a claim against Defendant Danielson and any claims against Danielson will be dismissed.

### C. Defendant Haun

Defendant Haun apparently presided over the hearing for Plaintiff's misconduct proceedings. Plaintiff does not allege any specific wrongdoing by Defendant Haun.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were

10

personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). No matter how liberally the Court construes Plaintiff's allegations relating to Defendant Haun, his allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, the Court concludes that Plaintiff has not stated a claim against Defendant Haun.

### D.     Defendants Prince, Harwood, and Sami

Defendant Prince played a role in the dispensing of the "wrong" medications on May 22. Defendant Harwood played a role in the dispensing of the "wrong" medications on May 28. And it appears that Defendant Sami may have also played some role in the dispensing of the "wrong" medications on May 28. At a minimum, Defendant Sami provided verifying information after-the-fact as part of Plaintiff's grievance process—that the correct medications were dispensed—and Plaintiff claims that information is false. She also apparently reported that Plaintiff's actions, which resulted in misconduct reports, were not attributable to a problem with medications. Plaintiff's allegations regarding these Defendants' actions (or inactions) implicate the Eighth Amendment's protections against cruel and unusual punishment as well as state law claims for negligence.

### 1.     Eighth Amendment claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. That prohibition obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment requires prison officials to provide medically necessary mental health treatment as well. *See id*. at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985).

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*

Plaintiff reports that he suffers from depression and anxiety. Those conditions might be severe enough to rise to the level of a serious medical need. In this instance, however, the claim is not that Defendants entirely failed to treat those conditions. The claim is that one of the

12

medications prescribed to treat those conditions was not given on May 28, 2023, and that both medications were missed—or perhaps almost missed—on May 22, 2023. For purposes of this analysis, the Court will presume that Plaintiff's depression and anxiety rise to the level of a serious medical need such that Plaintiff has satisfied the objective component of a deliberate indifference claim.

The subjective component of the Eighth Amendment's deliberate indifference standard requires an inmate to plead facts that would demonstrate that that the prison official had "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted).

### a. Defendant Prince

Plaintiff claims that Defendant Prince gave Plaintiff the wrong medication envelope on May 22, 2023. Plaintiff does not claim that Defendant Prince did so intentionally. Indeed, the facts alleged suggest that Defendant Prince did so accidentally. *Estelle* states that an inadvertent failure to provide adequate medical care does not give rise to a Section 1983 claim. *Estelle*, 429 U.S. at 105 ("An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain."). Such inadvertence might evidence neglect or professional malpractice, but it does not evidence the deliberate indifference necessary to state a claim for violation of the Eighth Amendment. Therefore, Plaintiff's federal claim against Defendant Prince is properly dismissed.

### b. Defendant Harwood

Plaintiff claims that the medication packet he received from Defendant Harwood on May 28, 2023, was intended for him, but contained double the mood stabilizer dose and failed to include his antidepressant. Plaintiff pointed that out to Harwood, but Harwood noted that Plaintiff's name was on the packet and that, perhaps, his medications had changed.

The facts alleged by Plaintiff regarding the May 28 incident do not support an inference that Harwood intentionally provided Plaintiff the wrong medications. To the contrary, Harwood relied on the actions of the medical personnel that provided the packet. Administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (custody officer entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*,

14

726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989)). Accordingly, the Court concludes that Plaintiff has failed to allege facts that support an inference that Defendant Harwood was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff's federal claims against Defendant Harwood are properly dismissed.

### c.     Defendant Sami

Although it is not entirely clear from Plaintiff's allegations that it was Defendant Sami who prepared Plaintiff's medications on May 28, based on Sami's after-the-fact verification that the medications dispensed were proper, the Court will consider Plaintiff's claims as if Defendant Sami put two mood stabilizers and no antidepressant in Plaintiff's medication packet. Even regarding Defendant Sami, Plaintiff alleges no facts that support an inference that Sami's error was anything more than negligence. Because negligence is not enough to support an Eighth Amendment claim for deliberate indifference to serious medical needs, Plaintiff's federal claims against Defendant Sami are properly dismissed.

## 2.     State Law Claims

Plaintiff's allegations might give rise to liability for the state-law tort of negligence or medical malpractice. Any assertion that Defendants violated state law fails to state a claim under Section 1983. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Nonetheless, to the extent Plaintiff seeks to raise such state law claims, the claims could fall within the supplemental jurisdiction of the Court.

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity

of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). The Court declines to exercise jurisdiction over any state-law claims that Plaintiff intended to raise, and those claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court declines to exercise jurisdiction over any state-law claims that Plaintiff intended to raise. Those claims will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's federal claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of

§ 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum. This is a dismissal as described by 28 U.S.C. § 1915(g).

    A judgment consistent with this opinion will be entered.


Dated:  August 22, 2023　　　　　　　　　　　　　　/s/ Sally J. Berens
                                                                                   SALLY J. BERENS
                                                                                   United States Magistrate Judge